# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT BENUSSI, | |
| Plaintiff, | NO. 3:17-CV-1668 |
| v. | (JUDGE CAPUTO) |
| LUZERNE COUNTY, *et al.*, | |
| Defendants. | |

## MEMORANDUM

Presently before me are two Motions to Dismiss Plaintiff Robert Benussi's Amended Complaint (Doc. 18): one filed by Defendants Luzerne County, County Manager Robert Lawton, and Warden James Larson (collectively the "County Defendants") (Doc. 21); and another filed by Defendants Correct Care Solutions, Dr. Renato Diaz, Nurse Elizabeth Joyce, and Nurse Michael Tengowski (collectively the "Medical Defendants") (Doc. 27).[1] Because the Medical Defendants did not receive notice of Benussi's action in satisfaction of Federal Rule of Civil Procedure 15(c), their Motion to Dismiss will be granted and all claims against them will be dismissed. However, because Benussi has adequately pled civil rights claims against the County Defendants, their Motion to Dismiss will be granted in part and denied in part. Finally, Benussi will be given leave to amend.

## I. Background

The well-pleaded facts as set forth in Benussi's Amended Complaint are as follows:

On September 6, 2015, Benussi, then incarcerated at Luzerne County Correctional Facility (the "prison"), injured his left foot while playing basketball. (Doc. 18 ¶¶ 25-26). One

---

[1] Benussi also names "John/Jane Doe" medical and correctional defendants (Doc. 18 at ¶¶ 14-15), but they are factually indistinguishable from the named defendants. None of the parties separately address the John Does in their Motions or briefing. Accordingly, I will group the John Doe medical defendants with the Medical Defendants, and the John Doe correctional defendants with the County Defendants. *See Iseley v. Bucks Cnty.*, 549 F. Supp. 160, 163 n.3 (E.D. Pa. 1982).

or more of the individual Medical Defendants saw Benussi that day and gave him an ice pack. (*Id.* ¶ 27). The next day, Benussi, experiencing extreme pain, asked one or more of the individual Medical Defendants or prison staff to be taken to "medical" for treatment, but his request was denied. (*Id.* ¶ 28).

Still experiencing extreme pain and discomfort, on September 11 Benussi "filed a grievance requesting medical attention for his foot," but his grievance "was ignored" and his foot remained untreated. (*Id.* ¶ 29). Five days later, on September 16, one of the medical staff took an x-ray of Benussi's foot at Dr. Diaz's direction. (*Id.* ¶ 30). No further attention or treatment was given to Benussi from that date through to October 5, even though he "remained in great pain and discomfort" and complained to Warden Larson and the correctional and medical staff. (*Id.* ¶¶ 30-31). On October 5, Benussi was finally referred to an orthopedic physician, who diagnosed Benussi's injury as a fracture and noted the foot "should have been casted immediately upon being injured." (*Id.* ¶¶ 35-36). Because of the month-long delay in treatment, the orthopedic physician concluded that Benussi's foot healed improperly, and referred him to an orthopedic surgeon. (*Id.* ¶¶ 37-40). On November 25, Benussi underwent a surgical procedure which involved rebreaking his foot, removing a portion of bone, and repairing the injury with a plate and screws, after which his foot was recast. (*Id.* ¶¶ 41-43). When he returned to the prison after the surgery, Warden Larson and correctional staff "forced" Benussi "into a segregated medical cell due to the bolts" in his "walking boot." (*Id.* ¶¶ 43-45). Between January 1 and February 20, 2016, Benussi remained in his segregated cell for twenty-three (23) hours each day, without "sufficient recreation time, exercise, or socialization." (*Id.* ¶ 46).

Benussi subsequently filed this action against the County Defendants and the prison's prior medical providers on September 15, 2017, alleging federal civil rights violations under 42 U.S.C. § 1983 and various state law causes of action. (Doc. 29 at 1). However, on or about December 22, 2017, over 90 days after Benussi filed his complaint, the defendant medical providers gave Benussi's counsel "affidavits of non-involvement and evidence that [they] were improperly named in the suit because they ceased to be medical

providers at [the prison] a few months before [Benussi's] injuries." (*Id.*). On March 13, 2018, Benussi filed an Amended Complaint which swapped the old medical providers with the current Medical Defendants. (*Id.* at 1-2).

The Amended Complaint sets out six Counts: Counts One and Two allege Section 1983 liability both individually and under a *Monell* theory against the County and Medical Defendants; Counts Three and Four allege intentional infliction of emotional distress and civil conspiracy against both groups of defendants; and Counts Five and Six allege negligence against the Medical Defendants (directly and vicariously). (Doc. 18). On March 28, 2018, The County Defendants filed their Motion to Dismiss the Amended Complaint (Doc. 21), and on April 19, 2018, the Medical Defendants filed their Motion to Dismiss (Doc. 27).

Both Motions to Dismiss have been fully briefed and are now ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, my role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). A court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory

3

statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, a court considers the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine "exhibits attached to the complaint, matters of public record," and "legal arguments presented in memorandums or briefs and arguments of counsel." *Mayer*, 605 F.3d at 230; *Pryor*, 288 F.3d at 560. Additionally, I may consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the

documents to the motion to dismiss. *Am. Corp. Soc. v. Valley Forge Ins. Co.,* 424 Fed. App'x 86 (3d Cir. 2011) (citing *Pension Benefit Gaur. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). I may also consider a "document integral or explicitly relied upon in the complaint." *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). At bottom, documents may be examined by a court when ruling on a motion to dismiss when the plaintiff had proper notice of the existence of the documents. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

**A. County Defendants' Motion to Dismiss**

1. Exhaustion

The County Defendants first argue Benussi's Amended Complaint must be dismissed because he failed to exhaust his administrative remedies at the prison before filing this suit. (Doc. 22 at 8-10). The Prison Litigation Reform Act ("PLRA") requires that prisoners exhaust their administrative remedies before bringing suit. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* The "filing [of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. *Id.* Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). But while courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement[,]" if administrative

remedies are not "available" then a prisoner need not exhaust them. *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). Administrative remedies are only available if they "are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (citation and internal quotation marks omitted). For example, a grievance procedure is not available if a prison "fail[s] to timely (by its own procedural rules) respond to [a] grievance and then repeatedly ignore[s] . . . follow-up requests for a decision on [a] claim." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

Exhaustion is a precondition to suit and is therefore a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Small v. Camden Cnty.*, 728 F.3d 265, 269-70 (3d Cir. 2013) (quotation omitted). Accordingly, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.* at 271. A prisoner is not required to allege, however, that administrative remedies have been exhausted. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is instead an affirmative defense, *id.*, which must be pled and proven by the defendants, *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

Here, Benussi alleges that he "filed a grievance requesting medical attention for his foot" and "was ignored." (Doc. 18 at ¶ 29). He attached to his opposition brief one Inmate Medical Grievance Form (Doc. 29-2), six Inmate Grievances (Docs. 29-3 to 29-8), five Healthcare Requests (Docs. 29-9 to 29-13), and three Inmate Request Forms (Docs. 29-14 to 29-16). The County Defendants attached to their brief a copy of the prison's grievance procedure, which states:

> The formal system for handling inmate grivances, except matters relating to misconduct procedures or pre-release procedures, which have a built-in appeal procedure. It is stressed that all efforts should be made to resolve and/or address any particular issue through normal facility procedures before resorting to the grievance system. The grievance response may be in fact direct you to consult with staffs, who routinely consider such matters if this has not already been accomplished. Grievance forms are available upon request from the block officer. The grievance system is not a form for inmate request and shall not be used as such. . . .

6

(Doc. 22-1 (errors in original)). Based on these submissions, I cannot tell whether Benussi has exhausted his administrative remedies. It appears Benussi filed the correct grievance form on at least six occasions, and that a prison official responded each time. (*See* Docs. 29-3 to 29-8). In response, the County Defendants argue in their brief "that Benussi will not be able to challenge the fact that he failed to submit a grievance[.]" (Doc. 22 at 10). While failure to exhaust may be asserted as an affirmative defense in a motion to dismiss, *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004), the County Defendants have produced no evidence showing Benussi did not use the "built-in appeal procedure" (whatever it may be) or otherwise failed to exhaust administrative remedies. A statement in a brief and a copy of a grievance procedure are not enough for the County Defendants to prove their affirmative defense, especially considering Benussi alleges his grievances were ignored. *Cf. O'Hara v. Mosher*, No. 3:17-CV-916, 2017 WL 5473462, at *5 (M.D. Pa. Nov. 14, 2017) (suit dismissed for failure to exhaust remedies because, among other things, Plaintiff did not allege his grievances were ignored and Defendant submitted declaration confirming Plaintiff failed to appeal grievances). Benussi's Amended Complaint will therefore not be dismissed under the PLRA for failure to exhaust administrative remedies at this time.

2. *Monell* Claim

The County Defendants next move to dismiss Count One of the Amended Complaint, which asserts a *Monell* claim against them (and some of the Medical Defendants). "[M]unicipalities and other local government units [are] to be included among those persons to whom § 1983 applies," and municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978). In *Monell*, the Supreme Court held that a municipality will not be found liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was

pursuant to a government policy, custom, or practice. 436 U.S. at 690-91, 98 S. Ct. 2018. Instead, a Section 1983 claim against a municipality requires a plaintiff to: (1) identify a policy or custom that deprived him of a federally protected right; (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Bell v. City of Phila.*, 629 F. App'x 214, 216 (3d Cir. 2015).

The County Defendants contend that Benussi does not present a viable *Monell* claim because the Amended Complaint fails "to articulate any facts to establish a pattern of neglect." (Doc. 22 at 12). For his part, Benussi argues that he has articulated sufficient facts: he alleges that the defendants deliberately maintained and carried out unconstitutional policies or customs of denying medical care to cut costs, failing to transfer inmates or refer them to medical specialists when necessary, and under-staffing medical services at the prison, which resulted in his injury. (Doc. 29 at 11-13).

While a "naked assertion" that the County Defendants "considered cost" in treating Benussi's injury would not "suffice to state a claim for deliberate indifference," the allegation that the County Defendants maintained a policy of denying necessary medical care because of cost does suffice. *See Winslow v. Prison Health Services*, 406 F. App'x 671, 674 (3d Cir. 2011) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care, but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective.")). Benussi alleges more than "subjective[] dissatisf[action] with his medical treatment" and County Defendants' consideration of cost in providing medical care. *Cf. id.* at 675. He alleges that the County Defendants and CCS "entered into a written contract which created a financial disincentive to meet the serious medical needs of inmates who required referrals." *D'Agostino v. Montgomery Cnty.*, No. CIV.A. 11-7728, 2012 WL 425071, at *4 (E.D. Pa. Feb. 9, 2012). That, along with the allegation that prison and medical staff "acted pursuant to a resulting policy, practice or custom which discouraged

outside referrals," suffices at this early stage. *Id.* (denying motion to dismiss on nearly identical *Monell* claim); *Kenney v. Montgomery Cnty.*, No. CIV.A. 13-2590, 2013 WL 5356862, at *7 (E.D. Pa. Sept. 25, 2013) (same).

In addition, the County Defendants argue County Manager Lawton should be dismissed on the ground that Benussi's Amended Complaint "is bereft of any facts that would justify this case proceeding as to him." (Doc. 22 at 13). They claim Benussi failed to establish Lawton's personal involvement in the alleged wrongdoing "through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quotation omitted). However, Benussi alleges that Lawton, a "policymaker," "developed, implemented, approved, maintained, and/or failed to adopt or maintain, a number of customs, policies, and practices at the Prison with deliberate indifference"—one of those policies being the discouraging of necessary outside referrals. (Doc. 18 at ¶¶ 3, 52-55). He also alleges that Lawton was "on notice of prior inmate complaints, lawsuits and injuries, regarding the deprivation of adequate medical care to inmates," and acquiesced in existing constitutionally deficient policies. (*Id.* ¶ 57). These allegations, taken together, are enough to suggest Lawton's personal involvement. *Evancho*, 423 F.3d at 353; *see Ruff v. Health Care Adm'r*, 441 F. App'x 843, 846 (3d Cir. 2011). Thus, the County Defendants' Motion to Dismiss will be denied as to Benussi's *Monell* claim against them.

## B. Medical Defendants' Motion to Dismiss

The Medical Defendants argue that Benussi's claims against them are time-barred by the applicable two-year statute of limitations because Benussi's Amended Complaint does not "relate back" to his original complaint. (Doc. 30 at 2-3). Benussi's original complaint, filed September 15, 2017, named the wrong medical providers as defendants; his Amended Complaint naming the proper medical providers was filed on March 13, 2018, after the statute of limitations had run. (*Id.*).

Federal Rule of Civil Procedure 15(c) governs the relation back of amendments. In order for an amended complaint which adds a new defendant to relate back to the original

complaint, three conditions must be met: (1) the claim against the newly named defendant must have arisen out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) within the 90-day period for service of the summons and complaint under Rule 4(m), the newly named party received notice of the action such that it will not be prejudiced in maintaining a defense on the merits; and (3) within that same period of time, the newly named party knew, or should have known, that but for a mistake, she would have been named as a defendant in the first place. *Robinson v. Adams*, No. 09-3587, 2010 WL 3069647, at *2 (E.D. Pa. Aug. 4, 2010) (citing *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001)). "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003).

Benussi's Amended Complaint thus relates back only if the Medical Defendants received notice of Benussi's action within 90 days of the filing of his original complaint. Under Rule 15(c), notice can be actual or constructive. "[N]otice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means. At the same time, the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action." *Singletary*, 266 F.3d at 195 (citation omitted).

However, Benussi has not alleged that any of the Medical Defendants received actual notice of his action within the 90-day window. Benussi instead relies on the contractual relationship between CCS and the prison, arguing it creates an "identity of interest" such that service on the prison provided constructive notice to CCS and CCS's employees. (Doc. 29 at 7-8). "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Singletary*, 266 F.3d at 197 (quoting 6A Charles A. Wright *et al.*, Federal Practice and Procedure § 1499, at 146

(2d ed. 1990)). "The identity of interest method requires the plaintiff to demonstrate that the circumstances surrounding the filing of the lawsuit permit the inference the notice was actually received by the parties sought to be added as defendants during the relevant time period." *Miller v. Hassinger*, 173 F. App'x 948, 956 (3d Cir. 2006).

Although the Third Circuit has not directly addressed whether a contract between a prison and an independent medical provider creates an identity of interest, the weight of analogous authority suggests it does not. *Garvin v. City of Philadelphia*, 354 F.3d 215, 227 (3d Cir. 2003) (individual non-managerial police officers did not "share a sufficient nexus of interests with their employer"); *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 199 (3d Cir. 2001) (staff psychologist not "so closely related" with his prison employer in "business operations or other activities" to "conclude that his interests . . . [we]re identical to the prison's interests"); *Markhorst v. Ridgid, Inc.*, 480 F. Supp. 2d 813, 817 (E.D. Pa. 2007) (corporations doing business with each other, but having no other connection, did not have identity of interest); *In re Convertible Rowing Exerciser Patent Litig.*, 817 F. Supp. 434, 442 (D. Del. 1993) (no identity of interest between originally named defendant and its unincorporated subsidiary with different management); *Bailey v. United States*, 289 F. Supp. 2d 1197, 1208 (D. Haw. 2003) ("Contractual relationships, by themselves, are insufficient to demonstrate a community of interest justifying an imputation of knowledge.").

The court in *Bailey v. United States* was confronted with an argument similar to the one Benussi makes here. In *Bailey*, the plaintiffs argued there was a "community of interest" between the new defendants "and various unrelated companies with which they had contracts" (one of which was the original defendant). 289 F. Supp. 2d at 1208. Despite the plaintiffs alleging there was an indemnification provision in the contract between the new and original defendants, the court held notice did not impute to the new defendant. *Id.* The contract, on its own, was not enough to suggest that the defendants were "so closely related in their business operations or other activities" that the court could infer notice to one defendant imputed to the other. *See id*.

I am mindful that at this stage in the proceedings, Benussi is unlikely to have

evidence bearing on CCS's notice. However, Benussi fails to allege facts that, taken as true, would allow me to infer notice imputed from the prison to CCS within 90 days of filing his original complaint. His Amended Complaint merely alleges CCS "was under contract with Defendant County to provide medical services to inmates at the Prison" (Doc. 18 at ¶ 10) and that this contract "was in place at all times relevant to the filing of [the] Complaint" (*Id.* ¶ 17). Even if that means CCS was still under contract with the prison at the time he filed suit, Benussi does not allege facts that indicate CCS and the prison had a "close working relationship." *Cf. Culbreth v. Corll*, No. 09-04277, 2010 WL 4178489, at *3 (E.D. Pa. Oct. 22, 2010) (new defendant was a partner of and worked in close proximity to the original defendant at the time of plaintiff's injury through to plaintiff's filing suit); *Robinson v. Adams*, No. 09-3587, 2010 WL 3069647, at *3 (E.D. Pa. Aug. 4, 2010) (new defendant was "integrally involved" with the original defendants as he closely worked with them on a "regular basis" as a supervisor). Therefore, a contract between CCS and the prison, by itself, does not allow me to reasonably infer an identity of interest sufficient to impute notice to CCS.[2]

For similar reasons, I cannot infer that notice imputed to the individual Medical Defendants from the prison. The fact that CCS's medical employees worked at the prison does not by itself plausibly suggest they were "so closely related" with the prison in "business operations or other activities" that their interests were identical. *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 199 (3d Cir. 2001). Like in *Singletary*, where a staff psychologist employed by the prison was not sufficiently high in the prison hierarchy

---

[2] Benussi also argues that notice should impute from the prison to CCS on an agency theory. (Doc. 29 at 7). Even if CCS were the prison's agent, Third Circuit precedent makes clear that agency alone is an insufficient basis for imputation of notice. *Walter v. Muhlenburg Twp. Police Dep't*, 536 F. App'x 213, 216 (3d Cir. 2013) (employee could not have been "deemed to have notice solely by virtue of his employment with the defendant" (citing *Singletary*, 266 F.3d at 199)); *see Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434-35 (3d Cir. 1994) (employer-employee relationship an agency relationship).

12

for there to be an identity of interest, here the individual Medical Defendants employed by CCS are not alleged to have administrative or supervisory duties at the prison that would indicate they are highly enough placed in the prison hierarchy to support a finding of identity of interest. Benussi does allege that Dr. Diaz was "in charge of administration, movement, and/or scheduling for [CCS]," (Doc. 18 at ¶ 34), but Dr. Diaz was employed by CCS, not the prison. *See* Brief for Appellant at 19, *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186 (3d Cir. 2001) (No. 00-3579) (staff psychologist in *Singletary* was employed directly by the prison and not by an independent medical provider). If notice to an employer does not impute to its own non-management employees, *see Singletary*, 266 F.3d at 199 (citing *Keitt v. Doe*, No. CIV.A. 93-2968, 1994 WL 385333, at *6 (E.D. Pa. July 22, 1994)), it is unclear how, absent other facts, notice could impute to the employees of an unrelated employer.

Accordingly, all claims against the Medical Defendants will be dismissed. Benussi will be given leave to amend, though, to file a second amended complaint which alleges facts that demonstrate the Medical Defendants received either actual or constructive notice in satisfaction of requirements of Rule 15(c), if he can do so.

## C. Counts Three and Four

Benussi concurs in the dismissal of Counts Three and Four of his Amended Complaint, which allege intentional infliction of emotional distress and civil conspiracy, respectively. (Doc. 29 at 13). Those Counts will be dismissed without prejudice.

## IV. Conclusion

For the above stated reasons, the Medical Defendants' Motion to Dismiss will be granted, and the County Defendants' Motion to Dismiss will be granted in part and denied in part. All Counts will be dismissed as to the Medical Defendants, and all Counts but One and Two will be dismissed as to the County Defendants. Benussi will be given leave to amend.

An appropriate order follows.

| | |
|---|---|
| <u>August 28, 2018</u><br>Date | <u>/s/ A. Richard Caputo</u><br>A. Richard Caputo<br>United States District Judge |